UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBERT J. THENO,

    Plaintiff,

v.                                      Case No. 24-cv-1513-pp

JAQUELINE RUBEMEYER JESS,
F. DENNIS ALERDING
and JUDGE JOSEPH M. HOOD,

    Defendants.

## ORDER SCREENING COMPLAINT AND DISMISSING CASE WITH PREJUDICE FOR FAILURE TO STATE CLAIM

    On November 21, 2024, the plaintiff—who is representing himself—filed a complaint alleging that multiple defendants, including two attorneys and a federal judge, had caused him to be falsely convicted of a crime. Dkt. No. 1. He paid the filing fee and received from the clerk's office a packet with instructions regarding how to serve process on the defendants. A few weeks after he filed his complaint, the court received from the plaintiff a letter stating that he was having difficulty locating defendant Jaqueline Rubemeyer for service and asking the court to appoint an attorney to represent him.

    This order screens the complaint and dismisses the case for failure to state a claim upon which a federal court can grant relief. Because the court is dismissing this case, the court will deny the plaintiff's request for assistance with service of process and motion for appointment of counsel as moot.

1

### I. Screening the Complaint

#### A. Legal Standard

"[D]istrict courts have the power to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of fee status." Rowe v. Shake, 196 F.3d 778, 783 (7th Cir. 1999); see also Rezny v. Wis. Dep't of Fin. Insts., Case No. 22-C-1285, 2022 WL 17551151 at *1 (E.D. Wis. Dec. 9, 2022) (stating that courts are free to screen a complaint for a self-represented plaintiff who has paid the full filing fee under 28 U.S.C. §1915(e)(2)). The court must decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). A document filed by a self-represented litigant must be "liberally construed[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). Similarly, a complaint filed by a self-represented litigant, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id.

Although the court liberally construes documents filed by self-represented litigants, those litigants still must comply with Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To state a claim against the defendants, the complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). "A claim has facial plausibility

2

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. Id. at 663-64.

B.  The Complaint

The plaintiff's claims arise from his trial and conviction for attempting to possess cocaine with the intent to distribute, which took place over thirty years ago in the Eastern District of Kentucky. See Theno v. United States, 52 F.3d 326 (6th Cir. 1995). The plaintiff was sentenced to 125 months of imprisonment and four years of supervised release. Id.

The plaintiff separates his complaint in this case into sections for each defendant. First, the plaintiff alleges that defendant Jaqueline Rubemeyer "gained a conviction through the use of false exaggerated lies" during her time as an Assistant U.S. Attorney for the Eastern District of Kentucky. Dkt. No. 1 at 2. The plaintiff contends that Rubemeyer was told these "lies" by a "paid government informant," that Rubemeyer relied on the lies "for every false statement presented to the Jury" and that they were not "backed up by evidence of any kind." Id. These false statements allegedly include (1) stating in closing argument that two individuals were missing because of the plaintiff and probably would "come up dead somewhere,"[1] even though the plaintiff contends that one of those individuals was a "paid government informant" who

---

[1] The plaintiff alleges that this statement was "deleted" from his transcripts. Dkt. No. 1 at 3.

3

worked with Rubemeyer and that those same individuals were arrested trying to leave the country "because of the murders they committed"; (2) stating in court that the plaintiff was in Panama depositing $9,999 in every bank there, even though plaintiff "has never had a passport"; (3) stating in court that the plaintiff was laundering money for years in Russia and Yugoslavia, although the plaintiff contends that he "has never been to either country, did not know anyone in said countries, and knew nothing about laundering money;" again the plaintiff asserts that Rubemeyer "simply repeated" lies told her by a paid informant; (4) stating in court that the plaintiff had made a down payment on a sports car that the plaintiff says was leased to someone else (he denies making such a down payment); (5) leaving the jury with the impression that the plaintiff had failed a polygraph test related to his criminal case when the polygraph actually was administered by a U.S. Customs agent in a different state and did not include questions about the Kentucky criminal case; and (6) asking the plaintiff while he was on the stand if he got started "stealing" drugs from vehicles he sometimes had towed while acting as a contractor for the Milwaukee Police Department. Id. at 2–4. The plaintiff also contends—apparently with regard to Rubemeyer—that there was "improper use of a paid government informant" because the informant did not appear at trial to be cross-examined and the informant's written testimony was not admitted into evidence. Id. at 4. He further alleges that the informant "lured the Plaintiff to Kentucky by selling him cars from Florida which were to be delivered to

4

Kentucky," that the cars "never showed up" and that the informant and his "associates stole and defrauded the Plaintiff out of thousands of dollars." Id.

The plaintiff also alleges that the performance of defendant F. Dennis Alerding (his counsel for the Kentucky trial) was deficient. Id. The plaintiff states that he did not have "an evidentiary hearing, discovery, or a preliminary hearing" and that he "only conferred briefly" with Alerding, so "no defense was prepared." Id. He alleges that Alerding did not object to the prosecutor's "harsh statements" or to her reading of inadmissible testimony, "[n]ot even when the U.S. Attorney left the Jury with the impression that the Plaintiff killed someone." Id. at 5.

Finally, the plaintiff sues the judge who presided over his trial, Judge Joseph M. Hood of the Eastern District of Kentucky. Id. He says that Judge Hood moved the trial from Covington, Kentucky—where the plaintiff says it "was to be held"—to Pikesville, Kentucky, "where-in neither spectators nor the media were present;" he alleges that "because of the fact that" Judge Hood lived in Pikesville and the plaintiff lives in Wisconsin, the jury was "swayed in the direction of the court." Id. He says that Judge Hood allowed the prosecutor to present inadmissible evidence and to make "harsh, unfounded" statements to the jury without any supporting evidence; the plaintiff says the prosecutor's statements were not true, and that in her closing argument, the prosecutor gave the jury the impression that he'd killed someone. Id. The plaintiff alleges that Judge Hood allowed the prosecutor to "approach the bench stating the Plaintiff failed a polygraph test given by the U.S. Customs in Milwaukee,

5

Wisconsin," but that the prosecutor did not add that the test didn't include any questions about the Kentucky criminal case, "which the Jury was led to believe that it did, when in fact it did not." Id. He alleges that Judge Hood refused to appoint new counsel when the plaintiff claimed that his counsel was ineffective. Id. at 5–6. The plaintiff alleges that Judge Hood denied his appeal bond due to the plaintiff's prior nonappearance for a scheduled court date, even though the judge knew that the plaintiff had been unlawfully detained in the Milwaukee city jail for eight days "which overlapped said trial date;" the plaintiff says he had been detained for questioning about the murders the informant and his associates had committed. Id. at 6. He alleges that at the end of the trial, Judge Hood instructed the jury not to speak with anyone regarding the trial, and told them that if anyone attempted to approach them, they should call Judge Hood personally. Id. He also alleges that during sentencing, he was sentenced to 108 months, but that when he maintained his innocence, Judge Hood "later" changed his sentence to 125 months Id.

The plaintiff requests $2,000,000 in damages and asks that his conviction be removed from his record. Id. at 7.

In a letter that the court received with the complaint, the plaintiff says that after he completed his supervised release and returned to Wisconsin, he was diagnosed with cancer and told he would not survive it. Dkt. No. 1-1. The plaintiff said that although he did survive, he lost everything he had. Id. He says doctors determined that stress caused the cancer, "(the stress of being in prison as the result of being the victim of a paid informant and his partner,

6

and an unjust trial)." Id. He says that he now has lung cancer and that he can't afford a lawyer. Id. He asks whether it is possible for him to take a polygraph test in open court "so that [he] can once and for all prove that [he has] never in [his] life bought, sold and/or taken an illegal drug," and to show that all of the allegations in his complaint are true. Id.

C. Analysis

The plaintiff asks the court to invalidate a conviction that occurred in 1991—thirty-three years ago. A federal defendant seeking to overturn his federal conviction must file a petition to vacate, correct or set aside his sentence under 28 U.S.C. §2255. The plaintiff knows this because this is not the first time he has challenged the Kentucky conviction. He has filed at least two unsuccessful petitions for *habeas corpus* in other districts. See Theno v. Brennan, No. 91-cv-926 (W.D. Wis.); Theno v. United States, No. 94-cv-79 (E.D. Ky.). He also sought leave from the Sixth Circuit Court of Appeals to file a successive *habeas* petition, which that court denied. Theno, No. 98-517 (6th Cir.). Even if the court of appeals had given him permission to file a successive *habeas* petition (as required by 28 U.S.C. §2255(h)), it appears that the plaintiff no longer is incarcerated or on supervision, and thus no longer is "in custody" for purposes of federal *habeas corpus*. And even if he were still in custody, 28 U.S.C. §2255(f)(1) imposes a one-year limitation period for filing a *habeas* petition; that one-year period begins to run when the judgment becomes final. The plaintiff's criminal conviction became final on June 5, 1992—over thirty-

7

two years ago. United States v. Theno, Appeal No. 91-5817 (6th Cir.), Dkt. No. 54.

The plaintiff prepared his complaint on the court's complaint form for non-prisoners filing without lawyers. Dkt. No. 1. It is possible that, in filing this civil lawsuit thirty-two years after his conviction became final, the plaintiff is trying to allege that the defendants' conduct during his trial violated his constitutional rights under 42 U.S.C. §1983. If so, the plaintiff cannot state §1983 civil rights claims against the defendants he has named because they are either immune from suit or are not state actors. Judge Hood has "immunity for judicial acts even if [he acted] erroneously, maliciously, or in excess of [his] authority; [he] can be liable only when acting in the 'clear absence of all jurisdiction.'" Bertha v. Hain, 787 F. App'x 334, 338 (7th Cir. 2019) (quoting Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)). See also, Polzin v. Gage, 636 F.3d 834, 838 (7th Cir. 2011) (citing Loubser v. Thacker, 440 F.3d 439, 442 (7th Cir. 2006)). The plaintiff alleges that Judge Hood committed procedural errors at trial and sentenced him too harshly. Federal judges have jurisdiction to conduct a trial and impose criminal sentences. Judge Hood is cloaked in absolute immunity and the plaintiff's remedy for any errors Judge Hood may have made was to raise those errors on appeal or in his prior §2255 petitions. Lewis v. Ludwig, Case No. 24-cv-1013, 2024 WL 3887660 (E.D. Wis. Aug. 21, 2024) (citing Dawson v. Newman, 419 F.3d 656, 660–61 (7th Cir. 2005)).

Similarly, "[a] prosecutor enjoys absolute immunity from [§]1983 suits for damages when he acts within the scope of his prosecutorial duties." Imbler v. Pachtman, 424 U.S. 409, 420 (1976). The plaintiff alleges that assistant United States Attorney Rubemeyer made false statements at trial. But she was acting within the scope of her prosecutorial duties by litigating the plaintiff's case on behalf of the government. The plaintiff has not alleged that Rubemeyer was acting outside the scope of her authority, so the plaintiff has not stated a claim against her.

The plaintiff also sued his defense attorney, F. Dennis Alerding, because he believes Alerding's performance was deficient for various reasons. "[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504 (2003). But the plaintiff had two opportunities to raise his ineffective-assistance-of-counsel claims—once on his direct appeal to the Sixth Circuit and the second time in his *habeas* petition in the Eastern District of Kentucky. He is not entitled to a third (or fourth or fifth) try. And to the extent that he is trying to sue his attorney under §1983, that statute allows a person to sue a *state official* for violations of his constitutional rights; criminal defense attorneys are not state officials. "[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." Polk County v. Dodson, 454 U.S. 312, 318 (1981). Because Alerding

was not a state actor, the plaintiff's allegations against him fail to state a claim for which relief may be granted.

The Seventh Circuit has instructed that a district court should give a plaintiff representing himself an opportunity to amend his complaint unless it is "certain that amendment would be futile or otherwise unwarranted." Zimmerman v. Bornick, 25 F.4th 491, 493-94 (7th Cir. 2022). Because the court finds that there are no grounds under which the court could overturn the plaintiff's decades-old conviction or allow him to proceed with a civil rights case against the named defendants, it would be futile to allow the plaintiff to amend the complaint.

The court will dismiss the complaint for failure to state a claim upon which this court can grant relief. To the extent that the plaintiff's December 9, 2024 letter was a request for the court to appoint him counsel, the court will deny it as moot.

## II. Conclusion

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which this court can grant relief. The clerk will enter judgment accordingly.

The court **CONSTRUES** the plaintiff's letter received on December 9, 2024 as a motion for appointment of counsel, and **DENIES AS MOOT** that motion. Dkt. No. 2.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by

filing in this court a notice of appeal within 30 days of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he should be aware that the appellate filing fee is $605. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion *in this court*. See Fed. R. App. P. 24(a)(1).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 31st day of January, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

11

Case 2:24-cv-01513-PP    Filed 01/31/25    Page 11 of 11    Document 3